CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 8 2010

JOHN F. CORCORAN, CLERK
BY: /s/ O. Thompson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Criminal Action No. 7:09CR00034 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| RODERICK BRUCE CALLOWAY, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendant. | ) | United States District Judge |

The defendant, Roderick Bruce Calloway, is charged in a one count indictment with knowingly possessing a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1). Calloway has moved to suppress evidence that was seized in an encounter with a Roanoke City Police Officer on the ground that it is the product of an unlawful search and seizure. The court finds otherwise and denies Calloway's motion to suppress.

I.

This court held a hearing on the motion to suppress, and Calloway called a single witness in support of the motion, Roanoke City Police Officer, Hugh Elsea. While conducting an investigation of another matter in the early morning hours of October 22, 2008, in an area he described as a "high crime" area, Officer Elsea, heard six or more gunshots. Almost immediately, Elsea entered his patrol car for the purpose of driving to the vicinity of the gunshots. En route, he encountered a single vehicle driving from the vicinity of the gunshots and observed no other movement coming from the area where the shots were fired. The vehicle subsequently turned onto a side road and abruptly pulled up to the curb and stopped as if to avoid detection. Elsea pulled in behind the vehicle without activating his flashing lights or siren and parked. Calloway, the driver, appeared to Elsea to be placing something under his seat, and after doing so placed

both hands out the window as if to indicate that he had nothing in his hands. Elsea also took this as an indication that Calloway had a firearm in the vehicle and was showing Elsea he did not have it in his hands, a gesture with which Elsea was familiar. Elsea then exited his patrol car and approached Calloway's vehicle without un-holstering his pistol. For safety reasons, Elsea asked Calloway to exit his vehicle. After Elsea repeated the request several times, Elsea opened the door, Calloway exited and locked the vehicle, and Elsea directed him to place his hands on the hood. While Elsea attempted to pat down Calloway for weapons, Calloway reached for his pockets several times, and Elsea eventually handcuffed him for safety reasons. Another officer who had followed Elsea as backup was able to see the butt of a firearm protruding from the driver's side front seat through the windshield of Calloway's vehicle. Elsea retrieved the keys from Calloway's pocket and used them to open the vehicle and retrieve the firearm. The firearm was still warm, indicating to Elsea that it had been fired recently. The vehicle was a rental vehicle, and it appears that later police officers retrieved a rental agreement from it.

## II.

Calloway now concedes that no Fourth Amendment intrusion occurred until the officer opened Calloway's door and ordered him to exit.[1] He argues, however, that Elsea lacked a reasonable articulable suspicion that criminal activity was afoot justifying a pat-down and ultimately entry into Calloway's vehicle to retrieve the firearm. The court disagrees.

A law enforcement officer may initiate a brief investigatory stop if he has reasonable

---

[1] Calloway's written motion contended that Elsea stopped Calloway's automobile "without lawful justification." The court notes, however, that Elsea did not actually stop Calloway's vehicle at all, but that Calloway parked the car before Elsea ever turned on his siren or lights.

suspicion to believe that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). In determining whether an officer had reasonable suspicion, the court views the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting the particular person of criminal activity." United States v. Griffin, 589 F.3d 148, 152 (4th Cir. 2009) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). "Although the reasonable suspicion standard 'defies precise definition,' . . . it is less demanding than probable cause . . . and falls considerably short of satisfying a preponderance of the evidence standard." Id. (internal citations omitted). Under the "stop-and-frisk" doctrine, a police officer who has made a lawful stop under Terry v. Ohio (a "Terry stop") may also pat down or frisk the person stopped for weapons if he has a reasonable, articulable suspicion that the person he has stopped may be armed and dangerous. Terry, 392 U.S. at 30. If an officer has conducted a Terry stop of a motorist, he may search the vehicle's passenger compartment "limited to those areas in which a weapon may be placed or hidden" if he "possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049 (1983). He may conduct such a search "even if the suspect is under police restraint at the time the search is conducted" because of the possibility that the suspect may escape restraint or regain access to the vehicle if the suspect is not arrested. See United States v. Elston, 479 F.3d 314, 320 (4th Cir. 2007); United States v. Griffin, 589 F.3d at 154.[2]

---

[2] Arizona v. Gant, 129 S.Ct. 1710 (2009), holds that the police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains

3

"An officer's articulated facts must in their totality serve to eliminate a substantial portion of innocent travelers before reasonable suspicion will exist." United States v. McCoy, 513 F.3d 405, 413 (4th Cir. 2008) (citing United States v. Sokolow, 490 U.S. 1, 7-11 (1989)). However, because reasonable suspicion "does not deal with hard certainties, but with probabilities," an officer's articulated facts when taken together need not "eliminate every innocent traveler, just a substantial portion of them." Id. Indeed, as the Supreme Court has underscored, "Terry itself involved a series of acts, each of them perhaps innocent if viewed separately, but which taken together warranted further investigation." Id.

With the above precepts in mind, the court readily concludes that Officer Elsea had reasonable articulable suspicion to require Calloway to exit his vehicle to conduct a limited investigation and to pat down Calloway for the officer's safety. It was the early morning hours in an area the officer described as a high crime area; the officer heard more than six gunshots in rapid succession; he immediately headed towards the vicinity of the gunshots a relatively short distance away and encountered only Calloway heading from the vicinity of the gunshots; Calloway pulled down a side street and abruptly pulled his vehicle up to the curb and stopped as if to avoid detection; the officer stopped behind Calloway without activating his emergency lights or siren; Calloway appeared to the officer to be placing something in a furtive manner under the front seat and then placed both hands out of the window which, based on previous experience, the officer took as an indication that Calloway had a firearm in the vehicle and was

---

evidence of the offense of arrest. This reasoning does not apply to a Terry stop before the suspect is arrested, however, because "the possibility of access to weapons in the vehicle always exists, since the driver or passenger will be allowed to return to the vehicle when the interrogation is completed." United States v. Griffin, 589 F.3d 154, n. 8 (4th Cir. 2009) (quoting Gant 129 S.Ct at 1724, Scalia, J., concurring).

showing him that he did not have it in his hands. The court concludes that these circumstances, considered in their totality, eliminated a substantial portion of innocent travelers and made Elsea's suspicion of active criminality reasonable and, therefore, justified a pat down for the officer's safety. Although these circumstances also support a protective sweep or search for weapons in the passenger compartment of Calloway's vehicle, by the time Officer Elsea retrieved the pistol from under the driver's seat, reasonable articulable suspicion had developed to probable cause, because the officer performing backup saw the butt of the pistol without entering the vehicle. Accordingly, the officers' actions did not contravene the Fourth Amendment prohibition against unreasonable searches and seizures, and the court will deny Calloway's motion to suppress.[3]

---

[3] The court notes that Calloway's reliance on United States v. Baldwin, an unreported Sixth Circuit case, is misplaced. See United States. v. Baldwin, 114 Fed. Appx. 675 (6th Cir. 2004). Not only does the case have negligible precedential value, it is easily distinguishable from the facts of this case. In Baldwin, after hearing several gunshots, the police witnessed an individual fleeing the vicinity on foot. Unable to locate that individual, the police ultimately approached a parked car in which the defendant was sitting. The Sixth Circuit noted that it was not reasonable for the officers to suppose that the individuals in the car were connected to the shooting, as they had reason to believe that the shooter fled the area on foot. In this case, however, Calloway was the first individual that officer Elsea witnessed leaving the area, and in fact Calloway's car was the only sign of movement at all coming from the area of the gunshots. This same distinction was made in Baldwin, in fact, by the Sixth Circuit when distinguishing the Fourth Circuit case of United States v. Moore, 817 F.2d 1105, 1108 (4th Cir. 1987), because in that case "the defendant was the *only* person in the vicinity of the suspected [criminal activity]." Baldwin, 114 Fed. Appx. at 681 (emphasis in the original). This fact, combined with Calloway's actions in abruptly stopping the vehicle, furtively leaning toward the floor, and throwing his hands out the window despite not having been pulled over, all distinguish the current case from the set of facts in Baldwin. Therefore, even if the court were inclined to give substantial weight to the unpublished Sixth Circuit opinion, it finds it readily distinguishable from the case at hand.

### III.

For the above-stated reasons, it is **ORDERED** and **ADJUDGED** that Calloway's motion to suppress is **DENIED**.

**Enter:** This 8th day of February, 2010.

_____
UNITED STATES DISTRICT JUDGE